■ In the Matter of TOWN OF AURORA, Respondent, v ANTHONY TARQUINI, Appellant, et al., Respondents.—

A threshold issue is whether we may entertain that contention inasmuch as it is raised for the first time on appeal. We conclude that we may because it involves a pure question of statutory interpretation and thus "is not a contention that could have been 'obviated or cured by factual showings or legal countersteps' " even if it had been raised at Trial Term *(American Sugar Ref. Co. v Waterfront Commn.,* 55 NY2d 11, 25, *appeal dismissed sub nom. New York Shipping Assn. v*

*Waterfront Commn.,* 458 US 1101, quoting *Telaro v Telaro,* 25 NY2d 433, 439).

Regarding the merits, our reading of the pertinent provisions of article 18 of the Executive Law (§§ 370-383) compels us to conclude that the regulation is not authorized by the enabling legislation. The statute, which is entitled the "Uniform Fire Prevention and Building Code Act", establishes uniform and minimum standards of fire protection and building construction (Executive Law § 371 [1] [a]-[c]; [2] [a], [b] [1]-[4]). The act authorizes the appointment of a council that is empowered to study existing laws in order to ascertain "the effectiveness of their provisions for health, safety and security, particularly as such provisions relate to the protection of life and property from the dangers of fire" (Executive Law § 375 [2]). The act authorizes the Council, following such study, to "formulate a uniform fire prevention and building code" to effectuate "the purposes of this article and the specific objectives and standards hereinafter set forth" (Executive Law § 377 [1]). To that end, the Council is empowered to promulgate "requirements for construction and construction materials for public and private buildings * * * consonant with accepted standards of engineering and fire prevention practices" (Executive Law § 377 [2] [a]) in order to "reduce the cost of construction without substantially affecting reasonable requirements for the health, safety and security of the occupants or users of buildings" (Executive Law § 377 [2] [c]). Under the act, a "building" is defined as a roofed "structure affording shelter for persons, animals or property" (Executive Law § 372 [3]). Executive Law § 378 (2), the provision relied upon by the dissent as authorizing the Council's promulgation of the swimming pool enclosure regulation, further indicates that the focus of the act is on the adequacy of building construction vis-à-vis the hazards of fire and other specified risks. That statute provides: "The uniform code shall address * * * [s]tandards for the condition, occupancy, maintenance, conservation, rehabilitation and renewal of certain existing buildings, structures and premises and for the safeguarding of life and property therein and thereabout *from the hazards of fire, explosion or release of toxic gases arising from the storage, handling or use of combustible or hazardous substances, materials or devices"* (Executive Law § 378 [2]; emphasis supplied).

The swimming pool enclosure regulation cannot be sustained under the general provisions of the act nor, as argued by the dissent, pursuant to the specific provisions of Executive Law § 378 (2). A swimming pool is not a "building" under the

act, and the enclosure requirement has nothing to do with fire prevention or the adequacy of building construction. Moreover, although a swimming pool is a "structure", the enclosure regulation has nothing to do with the hazards of fire, explosion or release of toxic gases from the storage, handling or use of hazardous or combustible substances. However laudable the Council's purpose in attempting to safeguard persons from the hazards of swimming pools, drowning is not among those specific hazards that the Legislature sought to guard against in promulgating the act and in delegating its legislative authority to the Council.

All concur, except Green and Lawton, JJ., who dissent and vote to affirm, in the following memorandum.

Green and Lawton, JJ. (dissenting). While we agree with the majority that the validity of the regulation may be resolved on the face of this record (see, Telaro v Telaro, 25 NY2d 433, 439, stay denied 26 NY2d 751), we disagree with the majority's conclusion that the regulation is invalid. We should strive to sustain the validity of the regulation if at all possible and must interpret it in the light of its purpose and spirit (see, McKinney's Cons Laws of NY, Book 1, Statutes §§ 11, 96). The majority's interpretation of section 378 (2) of the Executive Law is too restrictive in light of the purpose of the New York State Uniform Fire Prevention and Building Code Act (Act; see, Executive Law § 370 et seq.). The intent of the Act was to unite the former State Building Code and the former Fire Prevention Act into a "single, adequate, enforceable code" (Executive Law § 371 [1] [b]). The Act addresses two concerns: safety from fire hazards and safety from inadequate construction (Executive Law § 371 [2] [b]). Therefore, the regulation of pool enclosures is permissible since the Uniform Fire Prevention and Building Code is empowered to address "[s]tandards for the condition, occupancy, maintenance, conservation, rehabilitation and renewal of certain existing buildings, structures and premises" (Executive Law § 378 [2]). Though petitioner's pool is not a "building" (see, Executive Law § 372 [3]), it is a "structure" to which the statute applies (see, 9 NYCRR 606.3 [a] [204]). This section does not, as the majority contends, apply only to standards related to protection from the hazards of fire. Rather, properly read, this section addresses both "[s]tandards for the condition * * * of certain existing buildings, structures and premises" and "for the safeguarding of life and property * * * from the hazards of fire".

The regulation at issue was also authorized to encourage standardization of construction practices since there was no

single State-wide mandatory pool enclosure requirement immediately prior to enactment of the regulation (see, Executive Law § 377 [2] [d]).

Moreover, we conclude that the rule may be applied retroactively because the nonretroactivity provision (see, L 1981, ch 707, § 19) applies only to buildings and not structures (see, Executive Law § 371 [2] [b] [4]).

The Town Board's denial of petitioner's application for a variance was supported by substantial evidence. The Board properly found that there are no barriers between petitioner's home and barn, where the pool is located, and that the shrubbery to the west and south does not constitute adequate fencing to comply with the regulation.

Accordingly, we would confirm the Board's determination and affirm the judgment directing petitioner to comply with the regulation. (Appeal from judgment of Supreme Court, Erie County, Ostrowski, J.—special proceeding.) Present—Dillon, P. J., Callahan, Denman, Green and Lawton, JJ.